# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KATHY STURGILL,                                   :

              Plaintiff,

         -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.                 :

Case No. 3:12-cv-112

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).   The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.   The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);

1

*Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. § 423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. § 1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. § 1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. § 416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous

3

employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on August 28, 2007, alleging disability from September 24, 2006, due to bipolar disorder, a bulging disc, depression and anxiety. *See* PageID 161-63, 164-71; 196. The Commissioner denied Plaintiff's applications initially and on reconsideration.  PageID 101-18. A hearing was held before Administrative Law Judge Janice M. Bruning, (PageID 79-99), who subsequently determined that Plaintiff was not disabled. (PageID 58-72). The Appeals Council denied Plaintiff's request for review, (PageID 50-53), and Judge Bruning's decision became the Commissioner's final decision.  *See Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

Plaintiff filed applications for SSD and SSI on August 28, 2007, alleging disability from September 24, 2006, due to bipolar disorder, a bulging disc, depression and anxiety. *See* PageID 161-63, 164-71; 196. The Commissioner denied Plaintiff's applications initially and on reconsideration.  PageID 101-18. Administrative Law Judge Janice M. Bruning held a hearing, (PageID 79-99), and subsequently determined that Plaintiff is not disabled. PageID 58-72. The Appeals Council denied Plaintiff's request for review, (PageID 50-53), and Judge Bruning's decision became the Commissioner's final decision.  *See Kyle v. Commissioner of Social Security*, 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Bruning found that she met the insured status requirements of the Act through December 31, 2010.  PageID 60, ¶ 1. Judge Bruning also found that Plaintiff has severe degenerative disc disease, depression, anxiety, and substance abuse,

but that she does not have an impairment or combination of impairments that meets or equals the Listings.  *Id.*, ¶ 3, PageID 61, ¶ 4.  Judge Bruning found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work with the mental limitations of performing unskilled work that requires simple, routine four-step tasks, occasional contact with supervisors and coworkers, and no contact with the public.   PageID 64, ¶ 5.   Judge Bruning then used section 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing.   PageID 71, ¶ 9, 10.   Judge Bruning concluded that Plaintiff has not been under a disability since September 24, 2006.   PageID 72, ¶ 11.

The record contains a copy of treating physician Dr. Mauer's office notes dated April 19, 2001, through March, 2010. PageID 522-660, 882-942, 974-85. Those notes reveal Dr. Mauer treated Plaintiff for various medical conditions and complaints including back pain, depression, and anxiety. *Id.*

A March 12, 2003, lumbar spine CT scan revealed a broad based posterior disc bulge causing slight effacement of the anterior thecal sac and some extension of the lateral recesses. PageID 647.

In September, 2006, Plaintiff received emergency room treatment after being found unconscious as the result of a drug overdose. PageID 409-60. At the time she was treated, it was noted that Plaintiff had a history of suicide attempt with a similar kind of drug overdose. *Id.* Plaintiff's drug screen was positive for cocaine, barbiturates, tricyclic antidepressants, and benzodiazepines. *Id.* Plaintiff was hospitalized, regain consciousness the next day and on the third

day, refused further treatment and was discharged against medical advice. *Id.* Plaintiff was referred to Crisis Care. *Id.*

On October 23, 2006, Plaintiff sought mental health services at Samaritan Behavioral Health at which time Plaintiff's diagnosis was identified as generalized anxiety disorder and she was assigned a GAF of 55. PageID 354-60. On October 31, 2006, evaluating psychiatrist Dr. Housebrecht reported that Plaintiff was agitated, anxious, tremulous, and tearful and had a constricted affect. PageID 350-53. Dr. Housebrecht identified Plaintiff's diagnoses as anxiety disorder NOS, and rule out generalized anxiety disorder vs. panic disorder and he assigned Plaintiff a GAF of 50. *Id.* In March 2007, Plaintiff was referred to Eastway for treatment. PageID 342-43.

Plaintiff sought emergency room treatment on October 27, 2006, for a possible seizure. PageID 387-405. At that time it was noted that Plaintiff admitted to smoking cocaine the prior night. *Id.* A head CT showed questionable left frontal skull fracture of indeterminate age. *Id.* Plaintiff declined to speak with a social worker for help with her substance abuse and addiction, was treated, and discharged. *Id.*

In February 2007, examining physician, Dr. Vitols, reported that Plaintiff had some tenderness over the right Sl joint, some minimally increased muscle tone identified to palpation of the lumbar spine with no restricted motion, pain referenced to the lumbosacral area, no motor or sensory deficits, and no history of intermittent claudication. PageID 332-40. Dr. Vitols also reported that Plaintiff displayed no evidence of peripheral vascular disease, capsular thickening, or rheumatoid nodules. *Id.* Dr. Vitols identified Plaintiff's diagnoses as degenerative disc disease and facet arthritis of the lumbar spine and bipolar and hypertension by history. *Id.*

6

The record contains a copy of Plaintiff's mental health treatment notes from Eastway dated November 6, 2006 to August 9, 2007. PageID 495-520. Initially, Plaintiff's mental health care provider noted that Plaintiff reported multiple problems, poor coping skills, and multiple stressors. *Id.* Plaintiff's health care provider also noted that Plaintiff was restless, had rapid speech, a depressed mood and an anxious affect, and was intellectually functioning in the low average range. *Id.* Plaintiff's mental health care provider identified her diagnoses as generalized anxiety disorder, depression disorder NOS, alcohol dependence in full remission, and cocaine dependence in sustained full remission and they assigned Plaintiff a GAF of 39. *Id.* On February 16, 2007, Plaintiff's care provider noted that Plaintiff was anxious and had a flat affect and her diagnoses were identified as generalized anxiety disorder, depressive disorder NOS, alcohol dependence in sustained full remission, and cocaine dependence in sustained full admission with rule out panic disorder without agoraphobia, bipolar disorder II, and sedative, hypnotic, and anxyolic dependence. *Id.* Plaintiff's care provider assigner her a GAF of 50. *Id.*

Examining physician, Dr. Danopulos reported in November, 2007 that Plaintiff was able to move around the room normally, dress and undress without problems, and walk with a normal gait. PageID 662-72. Dr. Danopulos also reported that Plaintiff's upper and lower extremities had full ranges of motion, she had no joint abnormalities, her spine was painful to pressure, and that she demonstrated painful cervical spine motions, positive straight leg raising test, and lumbar spine restricted range of motion. *Id.* Lumbar and cervical spine x-rays taken in conjunction with Dr. Danopulos' examination revealed minor degenerative changes. *Id.* Dr. Danopulos identified Plaintiff's diagnoses as cervical spine arthralgias with minimal arthritic changes, minimal arthritic changes of the lumbosacral spine, well-controlled blood pressure, and bipolar disease. Dr.

7

Danopulos concluded that Plaintiff's ability to perform work activity was negatively affected by the arthritic changes in her spine. *Id.*

Examining psychologist, Dr. Halmi, evaluated Plaintiff on December 5, 2007, and noted that Plaintiff reported that she had not been the same mentally since her suicidal attempt, had been hospitalized in 1996, for a nervous breakdown, had been sober from alcohol since 1999, and that she acknowledged that she had used cocaine prior to her suicide attempt. PageID 674-80.  Dr. Halmi also noted that Plaintiff reported that she watched TV, took a shower, took her medication and slept, went out only when she had to, and that she saw a psychiatrist every two months and a psychologist once a month. *Id.* Dr. Halmi reported that Plaintiff had tense posture, poor eye contact, rapid rate of speech, flat affect, signs of anxiety, mildly impaired attention and concentration, exhibited memory problems, and that she was severely limited in her ability to perform abstract reasoning. *Id.* Dr. Halmi identified Plaintiff's diagnoses as major depressive disorder, recurrent and severe without psychotic features, cocaine dependence, and alcohol dependence. *Id.* Dr. Halmi assigned Plaintiff  a GAF of 44 and noted that Plaintiff struggled on tasks requiring concentration, memory, and abstract reasoning ability, and that she had fair insight and judgment, low average intelligence, and articulate speech. *Id.* Dr. Halmi concluded that Plaintiff had the ability to understand and remember simple, one and two step job instructions, her abilities to attend, concentrate, persevere, and keep pace to complete a normal work day and to communicate and get along with others were moderately impaired, and that her ability to adapt to the daily stressors associated with routine work was seriously impaired. *Id.*

The record contains Plaintiff's treatment notes from Eastway dated October, 2007, to October , 2008, and they essentially reveal that Plaintiff's mental health care providers treated her

with medication. PageID 701-03, 762, 769, 779, 817-19. Those notes also reveal that Plaintiff's therapist reported that Plaintiff appeared restless, hyperactive, and anxious with a constricted affect and that she had racing and loose thoughts. *Id.* During a March 20, 2008, assessment, Plaintiff's counselor identified Plaintiff's diagnoses as bipolar II disorder with recurrent major depressive episodes, generalized anxiety disorder, alcohol abuse in remission, cocaine dependence in remission, and cluster C traits and she assigned Plaintiff a GAF of 55. PageID 781-87. Plaintiff's therapist noted Plaintiff had chronic mental symptoms that continued to impair her insight and judgment. *Id.* On October 20, 2008, it was noted that Plaintiff had stopped coming in for treatment. PageID 767.

In April, 2008, Dr. Mauer, opined that Plaintiff was unable to work because she was unable to sit or stand for more than thirty to sixty minutes continually and for not more than four hours on an intermittent basis. PageID 723. Dr. Mauer also opined that Plaintiff required chronic pain medications and had right leg numbness after sitting for too long. *Id.* Dr. Mauer noted that Plaintiff had hypertension, hyperlipidemia, depression and bipolar disease. *Id.*

A lumbar spine MRI performed in July, 2008, revealed a soft disc protrusion with radial annular tear paracentral at L3-4 with mild sac compression and slight narrowing of the proximal right lateral recesses and mild contact with the right L4 root prior to sac, a minimal broad-based disc protrusion centrally plus a small focal right lateral soft disc protrusion at L4-5, mild effacement and displacement of the extraforaminal right L4 root, and mild facet arthritis and mild straightening of her lumbar spine. PageID 725-26. Plaintiff also underwent an MRI of the thoracic spine that same day, which showed multilevel degenerative disc disease with no significant neural compromise. PageID 728-29.

Plaintiff sought emergency room treatment on September 11, 2008, following a bicycle accident. PageID 733-50. It was noted that Plaintiff denied loss of consciousness and that her injuries included multiple abrasions to the shoulder and back, a dislocation to the right ring finger at proximal interphalangeal joint, and a laceration to the right side of the scalp without other evidence of head injury. *Id.* An x-ray of Plaintiff's right hand showed a dorsal dislocation of the proximal interphalangeal and to the right ring finger, her finger was successfully reduced with no evidence of fracture, she refused treatment of the head laceration. *Id.* Plaintiff was treated and released with advice for outpatient follow-up with a hand surgeon. *Id.*

Plaintiff was initially assessed at Advanced Therapeutics by a mental health social worker in July 2008. PageID 965-67.  The social worker reported that Plaintiff had rapid speech and impaired remote memory and that she was tearful. *Id.*  The social worker identified Plaintiff's diagnosis as bipolar and she assigned Plaintiff a GAF of 60. *Id.*  Over time, Plaintiff's mental health therapist reported that Plaintiff was depressed, crying, and anxious and that she had suicidal ideation during her sessions. PageID 952, 956, 958, 960, 964. Additionally, Plaintiff treated with psychiatrist, Dr. Rahman at Advanced Therapeutics, from September, 2008, through August, 2009.  PageID 944-64.  In September, October, and November 2008, Dr. Rahman noted that Plaintiff reported increased depression and anxiety, sleep problems, and some suicidal thinking without plans. *Id.* During the period December, 2008, through August, 2009, Dr. Rahman  noted that Plaintiff reported symptom improvement and that she had no suicidal or homicidal ideation, no hallucinations, and no side effects from medication. *Id.*

Plaintiff reported to consulting rehabilitation specialists, Dr. Johnson, on October 13, 2008, that she has suffered from back pain since 1996, but had never had it evaluated due to lack of

10

insurance. PageID 754-56.  Dr. Johnson noted that Plaintiff described her pain as a constant aching across the lower back, that her mid thoracic area is what bothers her most, her symptoms were equal right to left, and that she had constant aching in the mid thoracic region but has intermittent sharp stabbing pains. *Id.* Dr. Johnson reported that Plaintiff had some decreased reflexes, some tenderness in the mid thoracic region, decreased ranges of motion of her lumbar spine, no joint abnormalities, and normal sensation. *Id.* Dr. Johnson identified Plaintiff's diagnoses as chronic thoracolumbar pain which appeared to have a muscular component and some mild disc changes without evidence of active radiculopathy in the thoracic or lumbar region. *Id.* Dr. Johnson recommended that Plaintiff participate in physical therapy. *Id.*

Plaintiff  sought treatment from Dr. Nguyen at the Pain Clinic on October 28, 2008. PageID 877-79. Dr. Nguyen reported that Plaintiff had antalgic gait, decreased ranges of motion, and tenderness and he identified Plaintiff's diagnoses as degenerative disc disease, myofascial pain syndrome, bipolar disorder, and history of substance abuse and he recommended aqua therapy, lumbar epidural steroid injections, and lumbar facet injections. *Id.* When the physical therapist evaluated Plaintiff, he noted that she had decreased range of motion of her trunk, decreased left hip range of motion, decreased strength, and tenderness. PageID 875-76. Over time, Plaintiff was treated with injections, physical therapy, and medications. PageID 851, 853-54, 856, 859, 861, 863, 867-68, 871, 873, 986, 989-90, 993-97, 999-1001, 1003-04. On November 24, 2008, Plaintiff tested positive for Marijuana. PageID 873. A December 23, 2008 MRI of Plaintiff's thoracic spine showed T3-T9 bulging discs that effaced the thecal sac without cord contact.(PageID 821-22. An October 2009 treatment note from Dr. Mauer reveals that Plaintiff

was discharged from Dr. Nguyen's practice for refusing a urine drug screen at that practice. PageID 981.

Plaintiff consulted with Dr. Helfferich, an ENT specialist, on November 12, 2008, with complaints of a loss of smell and taste following her bicycle accident. PageID 971-72.    Dr. Helfferich essentially reported that Plaintiff's examination was normal. *Id.* A subsequent CT scan revealed normal findings. PageID 970.   In December, 2008, Dr. Helfferich reported that it was unlikely Plaintiff's anosmia would improve. PageID 968-69.

On April 17, 2009, Dr. Rahman reported that Plaintiff was moderately to markedly limited in her abilities to perform work-related mental activities. PageID 824-25. Dr. Rahman opined that Plaintiff was unable to work for twelve months or more. *Id.*

Plaintiff sought emergency room treatment for a closed head injury and a facial laceration on June 6, 2009, following a motor vehicle accident. PageID 827-47.

Plaintiff treated at the Dayton Pain Center with Dr. Reddy from November, 2009, to March, 2010. PageID 986-1018. When he first evaluated Plaintiff, Dr. Reddy reported that she had tenderness in her spine and sacroiliac joints, no gross deformity, negative responses to straight-leg-raise testing bilaterally, full strength in her upper and lower extremities bilaterally, and 2+ reflexes at the ankles and knees bilaterally. *Id.* Dr. Reddy also reported that he was concerned about the combination of medications Plaintiff was taking noting she appeared to be adversely under the influence of too much medications that day. *Id.* X-rays taken of Plaintiff's sacroiliac joints on December 8, 2009, showed mild degenerative changes and X-rays of  her thoracic spine revealed multilevel degenerative disease. PageID 973. Plaintiff attended six sessions of physical medicine therapy. PageID 986.

On April 28, 2010, Dr. Rahman opined that Plaintiff was markedly restricted in her daily activities and concentration, persistence, and pace, moderately restricted in her social functioning, and that she had experienced three episodes of decompensation. PageID 1019-36.  Dr. Rahman also reported that Plaintiff was being treated for mixed bipolar affective disorder and panic disorder with severe agoraphobia, she had poor coping and social skills and superimposed upon this was the fact that she has chronic depression and severe anxiety. *Id.* Dr. Rahman noted Plaintiff's perception of pain was considerably exaggerated and consequently her ability to cope with it was compromised even further. *Id.*  Dr. Rahman opined that Plaintiff was unable to deal with customary work pressures and would require constant supervision and redirection. *Id.*  Dr. Rahman reported that Plaintiff had severe agoraphobia and was markedly restricted in her daily activities, social functioning, and in her concentration, persistence, and pace. *Id.* Dr. Rahman opined that a person with an emotional disorder will self-medicate with alcohol/drugs and consequently if these substances were removed from the equation, the underlying psychiatric conditions emerge and cause severe disability. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting the opinions of treating physician Dr. Mauer and treating psychiatrist, Dr. Rahman. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards."  *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009).  "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [the claimant's] medical

13

> impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. § 404.1527(d)(2).

---

FN 1.  Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

"Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

> The *Wilson* court instructs that where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. *See Wilson.* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Id.* However, the ALJ's failure to follow the Agency's

> procedural rule does not qualify as harmless error where we cannot
> engage in "meaningful review" of the ALJ's decision.  *Id.* at 544.

*Blakley,* 581 F.3d at 409.

Judge Bruning gave Dr. Mauer's April 2008 assessment "little weight," finding he did not submit treatment notes to support his opinion. PageID 69. In addition, Judge Bruning found Dr. Mauer's opinion was inconsistent with the other evidence.  *Id.*

As noted above, Dr. Mauer has been Plaintiff's long-term treating physician; indeed, he has treated her since at least 2001. The record makes it clear that Dr. Mauer has been responsible for coordinating Plaintiff's care with the other specialists of record and that he is aware of Plaintiff's diagnoses and treatments provided by her other health care providers. Based on his long-term treatment relationship with Plaintiff, Dr. Mauer essentially opined that Plaintiff was disabled.   To the extent Dr. Mauer opined that plaintiff was "unable to work", (PageID 723), the ALJ was not required to give deference to the treating doctor's conclusion of disability.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

However, Judge Bruning's decision does not reflect an analysis of the regulatory factors in weighing Dr. Mauer's opinions.   *See* 20 C.F.R. § 404.1527(d)(2) (providing a number of factors which must be considered if the treating source opinion is not given controlling weight, including the length of the treatment relationship, the nature and the extent of the treatment relationship, the supportability of the opinion, its consistency with the record as a whole, the specialization of the treating source, and other factors).   It is arguable that in applying the requisite regulatory factors Dr. Mauer's assessment should have been afforded at great weight.

16

Under these facts, the Court concludes that the Commissioner failed to properly evaluate long-term treating physician Dr. Mauer's opinion. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.   The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).   If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.   *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); see also, *Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order.   *Sullivan v. Finkelstein,* 496 U.S. 617 (1990).   The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing."   *Id.*

This Court concludes that not all of the factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, the Court notes that while the Commissioner failed to properly evaluate Dr. Mauer's opinion, there may be adequate bases for the Commissioner to reject that opinion. That is, of course, the Commissioner's function and is not the function of this Court.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is further recommended that this matter be remanded to the Commissioner for further administrative proceedings. Finally, it is noted that this would be a Fourth Sentence remand and it is therefore recommended that this matter be terminated on the Court's docket.

December 20, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

J:SocialSecurity\\Sturgill_SSD&SSI

## NOTICE   REGARDING   OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).